UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY LOU AYALA,<br><br>    Plaintiff,<br><br>    v.<br><br>COACH, INC., et al.,<br><br>    Defendants. | Case No. 14-cv-02031-JD<br><br>**ORDER RE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. Nos. 78, 82 |

In this employment class action case, the parties jointly move for preliminary approval of a proposed settlement and conditional certification of the proposed class. At oral argument, the Court expressed concern about some of the proposed terms, which the parties have now revised. In light of those changes, the Court grants preliminary approval.

**BACKGROUND**

This lawsuit arises from two separate actions, *Miranda v. Coach, Inc.*, filed March 20, 2014, and *Ayala v. Coach, Inc.*, filed April 18, 2014. The Court consolidated the cases on August 21, 2014, and dismissed Plaintiff Eve Miranda after the parties' settled her claims, leaving Ayala as the only named plaintiff. Dkt. Nos. 18, 55. Ayala alleges under California state law that her former employer, defendant Coach, Inc. ("Coach"), "owes wages and did not provide sufficient meal and rest breaks as a result of conducting security checks on employees who bring bags or coats to work when they later leave the store with those items and also claims that Coach did not properly calculate overtime pay." Dkt. No. 82-2 at 1. Ayala sues on behalf of a putative class of Coach's California sales associates. *Id.*

The parties went to mediation in February 2016 and reached a settlement. Dkt. No. 75. The Court denied preliminary approval of this agreement in June 2016 over concerns about the

1   parties' failure to adequately state the full potential recovery value if the case were tried

2   successfully, the absence of a second round of disbursement of unclaimed funds to class members,

3   and generally insufficient notice and follow-up measures. Dkt. No. 79. The parties revised the

4   terms and signed an Addendum to the Settlement Agreement, which along with the unchanged

5   portions of the Settlement Agreement are the operative agreements here. Dkt. No. 82.

## DISCUSSION

### I.  BASIC SETTLEMENT TERMS

The settlement class consists of "[a]ll individuals recorded in Coach's personnel database as having the title of Sales Associate (part-time and/or full-time) while employed in California at any time from March 20, 2010 through May 3, 2016." Dkt. No. 82-2 (Settlement Agreement) ¶ 3. Under the revised Settlement Agreement, Coach will put up $1,750,000. *Id.* ¶ 8. Class counsel will seek an award up to $437,500 of the settlement for attorneys' fees, plus reasonable litigation costs, all subject to the Court's discretion in a separate fees proceeding. *Id.* ¶ 28. Ayala, as class representative, requests an enhanced service payment of not more than $7,500, which is also subject to the Court's discretion. *Id.* ¶ 29. The Settlement Administrator will be paid $39,495. Dkt. No. 82-1 (Addendum) ¶ 31. The parties propose to pay $3,750 to the LWDA for the state's statutory share for the PAGA class claim for wage and hour violations. Dkt. No. 82-2 ¶ 30. After these costs, the net settlement amount will be distributed to the class members pro rata, based on the number of weeks worked during the class period. *Id.* ¶ 27.

The class members do not have to submit claim forms in order to receive a settlement check; all class members will receive a check unless they exclude themselves from the settlement. Dkt. No. 82-1 ¶ 48. Class members have 60 days to request the exclusion. Dkt. No. 78 at 9-10; Dkt. No. 82-3 at 3. Any funds remaining after the Check-Cashing Deadline will be redistributed to the class members who cashed their initial checks, using the same calculation formula as the initial distribution. Dkt. No. 82-1 ¶ 48. Any funds remaining after the second distribution will be recommended as a *cy pres* award to the Legal Aid Society - Employment Law Center of San Francisco. *Id.* If the average net payment to be redistributed to each Class Member does not exceed $2.00 after administrative costs, the value of the uncashed checks will also be

recommended for donation to the Legal Aid Society - Employment Law Center of San Francisco. *Id.*

Notice will be sent to the class members' residences by first class U.S. mail to the most current, known mailing addresses and emailed to all class members "using the last-know email address for Class Members maintained in Defendant's records." *Id.* ¶ 34.  Plaintiff and class members who cash a settlement check will be deemed to release any claims in the complaint or "arising from, or derivative of, the claims or factual allegations asserted in the Action regarding security checks or the calculation of overtime pay ('Released Claims')." *Id.* ¶ 25.

## II. PRELIMINARY APPROVAL OF SETTLEMENT

Where the parties reach a proposed settlement of a class action prior to class certification, proposing the certification of a class for settlement purposes, the Court must review the agreement and approve "both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Federal Rule of Civil Procedure 23(e) requires the Court to examine the proposed settlement and make a preliminary finding of fairness.  A class action settlement may be approved only if the Court finds that it is "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(1)(C).  "[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  This is because "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Id.*  Still, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The primary consideration in evaluating a class settlement agreement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  In order to achieve this goal, the Court will give preliminary approval of a class settlement and notice only when (1) "the proposed settlement appears to be the product of

3

serious, informed, noncollusive negotiations," (2) "has no obvious deficiencies," (3) "does not improperly grant preferential treatment to class representatives or segments of the class," and (4) "falls with the range of possible approval." *Stokes v. Interline Brands, Inc.*, No. 12-cv-05527-JD, 2014 WL 5826335, at *3 (N.D. Cal. Nov. 10, 2014) (citation omitted).

The previous settlement agreement had several issues involving notice, disbursement to class members before allocating funds to the State, sending objections to the Court, and a lack of clarity about the discount awarded, the full potential recovery value available and the actual recovery awarded. *See* Dkt. No. 79. The Court has considered the declarations of Jay A. Christofferson, the Settlement Addendum, and the revised Notice of Class Action Settlement ("Class Notice"). Dkt. No. 82. The parties have satisfactorily addressed these issues and the Court now finds that the agreement is "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(1)(C).

### A.   Notice

The Court was concerned that the previous agreement's proposed method of class notice was insufficient because it provided only for notice by U.S. mail. *See* Dkt. No. 79. Notice under Rule 23(c) must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." The original agreement's proposed method of notice did not meet this standard. The parties have now agreed that the methods of notice will include not only delivery by U.S. mail to most current, known mailing addresses, but also email "using the last-known email address for Class Members maintained in Defendant's records." Dkt. No. 82-1 ¶ 34.

Rule 23(c) also requires that notice be clear and concise, with language that is plain and easy to understand. The Court finds that the Class Notice fairly, plainly, accurately, and reasonably provides class members: (1) appropriate information about the nature of this action, the definition of the class, the identity of class counsel, and the essential terms of the Settlement; (2) appropriate information about the plaintiff's and class counsel's forthcoming applications for service payments, attorneys' fees, and expenses; (3) appropriate information about the procedures for final approval of the Settlement and the class members' rights to object; (4) appropriate

information about how to object to or elect not to participate in the Settlement, and (5) appropriate information as to how to obtain additional information regarding this action and the Settlement. *See* Dkt. No. 82-3.

The Court finds that form and distribution of the Class Notice in the manner set forth in the Addendum and the Settlement Agreement constitutes the best notice practicable and is valid, due and sufficient notice to all members of the Class, complying fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, and any other applicable laws. The Court approves the notice proposed by the parties, both in form and content.

### B. Unclaimed Funds

In the original agreement, the parties proposed that unclaimed funds would be "tendered to the State of California in the name of the Class Member to be available to them should they request the funds." Dkt. No. 78-4 ¶ 48. The Court found that proposal to be unfair to the class because a second distribution was feasible and could be readily accomplished. The parties now agree that any funds left unclaimed after the initial Check-Cashing Deadline will be redistributed to the class members who cashed their initial checks using the same calculation formula as the initial distribution. Dkt. No. 82-1 ¶ 48. Only after these two rounds will any leftover finds be recommended for a *cy pres* award. *Id.*

### C. Recovery Disclosures

The initial proposed settlement agreement did not state the full potential recovery value available to the putative class, the actual recovery that will be awarded under the settlement, and the basis for the discount between these amounts. *See* Dkt. No. 79. The parties submitted a declaration in response to clarify these amounts and how they were determined. Dkt. No. 82 at 3-7. The full value of all the claims is just under $22 million. *Id.* at 7. After taking risk into account for each potential claim independently (regular rate claim, security check claims for unpaid wages, meal period and security check violations, and derivative claims), the discounted value of the claims totaled $1,784,016.53. *Id.* at 3-7. Given these estimates, which the Court has no reason to question, the settlement amount of $1,750,000 is adequate and reasonable.

**D. Objections to Settlement**

The initial settlement agreement proposed that objections be sent only to the Settlement Administrator. Dkt. No. 78-4 ¶ 39. The parties have revised the agreement so that class members will also send objections to the Court. Dkt. No. 82-1 ¶ 39.

## III. CLASS CERTIFICATION

The parties also request that the Court conditionally certify the proposed class for settlement purposes only. In certifying a class for settlement purposes, review of the proposed class is "of vital importance," as the Court lacks the opportunity to make adjustments to the class, as it ordinarily would when a case is fully litigated. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To be certified, the proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23. Rule 23(a) provides that a class action is available only where: (1) the class is so numerous that joinder is impracticable; (2) common questions of law or fact exist; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the class interests. Additionally, Rule 23(b)(3), which plaintiff has invoked, requires the Court to also find that common questions of law or fact predominate over the questions affecting only individual class members, and that a class action is the superior method for fair and efficient adjudication. The Court finds that the requirements of Rule 23(a) are satisfied:

1. The numerosity requirement is met because during the applicable statutory period, it is "estimated that Defendant employed 4,143 sales associates in California." Dkt. No. 78 at 17.

2. The commonality requirement is met because class members all seek the same remedies under the same theories of recovery, "all relating to the Defendants' alleged failure to pay wages for all time spent waiting for bag and coat checks to be completed before leaving the store on rest and meal breaks and at the end of their shifts, the failure to pay overtime and bonuses owed and penalties for violations of the Labor Code." *Id.* Additionally, "Coach maintained a written bag check policy and implemented uniform compensation policies that applied to all Class

1     Members." *Id.*

2.   3.  The typicality requirement is met because Ayala brings "identical" claims as class members. *Id.* at 18. Like the class members, she alleges "the Defendant failed to pay for all time spent waiting for bag and coat checks to be completed in addition to failing to pay all overtime and bonuses owed." *Id.*

4.   The adequacy requirement is met because there appears to be no conflict between Ayala and the other class members and no dispute about class counsel's competence. *Id.* at 18-19.

In addition, the requirements of Rule 23(b)(3) are satisfied. Common questions of law and fact predominate over any questions affecting only individual class members, because the primary issues in dispute revolve around Defendant's allegedly unlawful employment policies, which generally apply to all class members. The Court also finds that a class action is the superior method for resolving this controversy. There are over four thousand potential plaintiffs, and a single employee's claims would likely be too small to motivate individual litigation.

The Court conditionally certifies for purposes of implementing the Stipulation of Settlement, the Settlement Class consisting of "All individuals recorded in Coach's personnel database as having the title of Sales Associate (part-time and/or full-time) while employed in California at any time from March 20, 2010 through May 3, 2016."

### IV. APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

For the purposes of settlement, the Court finds that plaintiff Mary Lou Ayala has claims typical of class members and is an adequate representative of the class. The Court appoints Ayala to serve as the Class Representative.

The Court appoints Eric B. Kingsley and Liane Katzenstein Ly of Kingsley & Kingsley APC as attorneys for the Class for purposes of settlement and finds for the purposes of settlement that these attorneys are qualified to represent the Class.

### V. APPOINTMENT OF CLAIMS ADMINISTRATOR

The Court approves the selection of Rust Consulting, Inc. to be the Claims Administrator. The Claims Administrator will administer the applicable provisions of the Stipulation of

Settlement, including, but not limited to, mailing each class member the Notice of Class Action Settlement and distributing settlement payments to class members.

## VI. FINAL APPROVAL OF THE SETTLEMENT

The parties are directed to file the motion for final approval and the motion for attorney's fees and costs according to the schedule proposed in plaintiff's preliminary approval motion. Dkt. No. 78 at 9-10.

**IT IS SO ORDERED.**

Dated: October 17, 2016

JAMES DONATO
United States District Judge